THOMPSON *v.* HURSON.

1. FRAUDS, STATUTE OF—ORAL CONTRACTS—AGREEMENT TO DIVIDE PROFITS FROM SALE OF LAND.

    An oral agreement to divide the profits on the purchase and resale of real property, where the interest claimed by defendant was by way of compensation for services rendered in removing houses and relocating them, and not for any interest in lands, is not within the statute of frauds. *Carr* v. *Leavitt,* 54 Mich. 540.[1]

2. SAME—ORAL CONTRACTS—EQUITY—ESTOPPEL.

    Where plaintiff claims under an oral agreement he is estopped to invoke the statute of frauds in a court of equity, particularly where it would operate inequitably upon the claimed rights of defendants.

3. EVIDENCE—PREPONDERANCE—CREDIBILITY OF WITNESSES.

    Where there is no clear preponderance of evidence respecting the claims of the parties, the credibility of the witnesses, together with the general probabilities of the case, in the light of all the facts and circumstances, must be the controlling factors in arriving at a decision.

----

[1]See note in 15 L. R. A. (N. S.) 313, 317.

4. FRAUDS, STATUTE OF—ORAL CONTRACTS—COMPENSATION FOR SER-
VICES—PROFITS.

Oral agreements involving transactions in real estate and
for services to be compensated for. out of the profits, when
realized, especially where the transactions are to extend
over an indefinite period of time, and involve the expendi-
ture of considerable sums of money, while not within the
statute of frauds, are tainted with the evil at which the
statute is aimed.

5. APPEAL AND ERROR—REVIEW—CREDIBILITY OF WITNESSES.

Where, in a court of equity, the decision must turn almost
entirely upon the relative credibility of witnesses, very
clear evidence of unreliability of persons who testified to
material facts must appear in the record to justify the
Supreme Court in disturbing the findings of fact of the
trial judge, because of his superior advantages.

Cross-appeals from Wayne; Shepherd, J., presiding.
Submitted April 16, 1918. (Docket No. 101.) De-
cided June 3, 1918.

Bill by William E. Thompson against Patrick E.
Hurson, Martha L. Hurson and others for an injunc-
tion, the cancellation of a deed and contract, and for
an accounting. Defendants Hurson filed an answer
and cross-bill for similar relief. From the decree ren-
dered, plaintiff and defendants Hurson. appeal. Af-
firmed.

*Charles T. Wilkins,* for plaintiff.

*Chamberlain, Denby, Webster & Kennedy,* for de-
fendants Hurson.

FELLOWS, J. After a full hearing of this case, the
learned trial judge made the following findings of
fact:

"(1) An oral agreement was entered into by and
between the plaintiff, William E. Thompson, and the
defendant Patrick E. Hurson by which it was agreed
by and between these parties that they should enter

into the business of purchasing houses which might be offered for sale and removing the same to and relocating and re-erecting the same upon real estate which should be purchased for that purpose, and the selling of such buildings and real estate, and that both of said parties should look out for such buildings and real estate as might answer the purposes of their agreement, and that the financing of such transactions should be provided for by the plaintiff, William E. Thompson, and that the defendant Patrick E. Hurson should supervise the necessary operations of removing and relocating and re-erecting such buildings and that the plaintiff, William E. Thompson, should have control of the manner and time of the sale of such properties and the selling price thereof, and that the profits which might be derived from such transactions should be equally divided between the plaintiff, William E. Thompson, and the defendant Patrick E. Hurson; that there was no contract, or note or memorandum thereof, in writing between the parties, or signed by either of them, but that the said oral agreement was and is a valid and binding contract between the plaintiff, William E. Thompson, and the defendant Patrick E. Hurson; that under and in furtherance of such oral agreement, the buildings now located on Cortland avenue, Bethune avenue and Byron avenue properties were purchased and moved to the several parcels of real estate acquired for that purpose, the financing of these transactions provided for by the plaintiff, the defendant Patrick E. Hurson paying out certain moneys in the erection of the building on the Cortland avenue site in addition to the moneys paid out or advanced by the plaintiff; that the building now on the Cortland avenue property was purchased and paid for by the plaintiff, for the use of himself and the defendant, to be removed to and re-erected upon real estate to be acquired for that purpose; that a contract for the purchase of the Cortland avenue site was drawn up in writing, naming the defendants Brown as vendors therein and the plaintiff and the defendant Patrick E. Hurson as vendees therein, but was not signed by said Patrick E. Hurson, but was, before the building was moved from its original site, signed and executed by the defendants Brown and the plaintiff, the

plaintiff making the only payment, to wit, five hundred dollars ($500.00), thereon from his own funds; that afterwards and after the building had been removed to the Cortland avenue site, the defendant Patrick E. Hurson, without the knowledge or consent of the plaintiff, secured, from the defendants Brown, a deed to himself and wife, the defendants Hurson, of the part of the Cortland avenue site on which the building had been relocated and a contract for the purchase, by these defendants, of the remainder of that site, and secured, from the defendant Highland Park State Bank, a loan of five thousand dollars ($5,-000.00) secured by a mortgage on such deeded premises and building executed by himself and wife, the defendants Hurson, part of the proceeds of such loan being·used on such building, part for the payment of the balance due on the delivery of the deed, and the balance being deposited in the Highland Park State Bank in the name of the defendant Patrick E. Hurson, the defendants Highland Park State Bank and Brown believing that the defendants Hurson had a right to such deed and contract and a right to execute such mortgage; that the title to that part of the Cortland avenue property so deeded now stands in the names of the defendants Hurson, under said deed and subject to the said mortgage, the title to the balance of these premises having been, with the consent of the parties, since the beginning of this suit, taken by deed and now being in Henry H. Sanger, as trustee, to await the determination of the court in this cause, the amount due on the contract having been paid from the moneys in the Highland Park State Bank, covered by the injunction heretofore issued in this cause, and from the rent of the premises; that the buildings now located on the Byron avenue and Bethune avenue premises and the real estate on which they are now located were purchased and paid for by the plaintiff from his own funds, the title to such real estate being taken, by deed, in the name of the plaintiff and a mortgage of two thousand six hundred dollars ($2,-600.00) being executed to the Wayne County and Home Savings Bank, of Detroit, and placed by the plaintiff on the Byron avenue property and a mortgage of four thousand six hundred dollars ($4,600.00)

being executed to the said Wayne County and Home Savings Bank and placed by the plaintiff on the Bethune avenue property; that the title to the Byron avenue and Bethune avenue properties still stands in the name of the plaintiff, under the said deeds and subject to said mortgages; that the Cortland avenue and Byron avenue properties, so-called, are now occupied by tenants, the Byron avenue property being under the control of the plaintiff, William E. Thompson, and the rentals of the Cortland avenue property being received and held under an agreement between the plaintiff, William E. Thompson, and the said defendant Patrick E. Hurson made since the institution of this suit, under which neither of them receives the rentals until the further order of this court, and the disposition of this property being enjoined by this court, the Bethune avenue property being continuously occupied by the plaintiff, William E. Thompson, as his home, since June 14, 1915; that none of said properties have been sold or any moneys received on account thereof, other than the rentals derived from the Cortland avenue and Byron avenue properties, and that the moneys invested by the plaintiff in said Cortland avenue property are in excess of any rentals received by the plaintiff.

"(2) There was no contract, or note or memorandum thereof, in writing concerning the agreement between the plaintiff, William E. Thompson, and the defendant Patrick E. Hurson, on which the claim of the defendant Patrick E. Hurson in this cause to any interest in the proceeds of the Bethune avenue and Byron avenue properties are based and on which the finding of the court and the decree herein as to the Bethune avenue and Byron avenue properties are founded, but the plaintiff, William E. Thompson, has come into a court of equity and seeking equity, must deal equitably with the defendant Hurson, equity sustains the claim of the defendant Hurson in the profits of the Byron avenue and Bethune avenue properties and no writing was necessary.

"(3) The plaintiff has maintained by proof his right to a one-half interest in the profits made in the transaction relative to the Cortland avenue property, so-called.

201—Mich.—44.

"(4) The agreement between the defendant Patrick E. Hurson and the plaintiff, William E. Thompson, was substantially performed and was sufficiently definite to base thereon the claim of the defendant Patrick E. Hurson to one-half of the profits arising from the transactions as to the Bethune avenue and Byron avenue properties, so-called, and contemplated, among other things, that the plaintiff, William E. Thompson, should finance these transactions, purchase the real estate necessary therefor and sell the same within a reasonable time and that the profits should be equally divided between the plaintiff, William E. Thompson, and the defendant Patrick E. Hurson, and that the plaintiff should have control of the manner and time of sale of such properties and of the price at which the same should be sold; and the defendant Patrick E. Hurson has maintained by proof his right to a one-half interest in the profits of the Bethune and Byron avenue properties, so-called.

"(5) On the transaction involving the first automobile and Waverly lot, set forth in the pleadings in this cause, there is a balance owing to the defendant Patrick E. Hurson from the plaintiff, William E. Thompson, of two hundred and seventy dollars ($270.00), which should be allowed on the final accounting.

"(6) The second automobile is the joint property of the plaintiff, William E. Thompson, and the defendant Patrick E. Hurson; it stands these parties in at four hundred and ninety-seven dollars and ninety-seven cents ($497.97), for purchase price and maintenance, of which amount the defendant Patrick E. Hurson has paid ninety-seven dollars and ninety-seven cents ($97.97) more than the plaintiff, William E. Thompson; and, on a final accounting, the plaintiff, William E. Thompson, should be charged and the defendant Patrick E. Hurson credited with one-half of that amount, or forty-eight dollars and ninety-eight cents ($48.98).

"(7) In the accounting in this cause, the value of the Bethune avenue property should be placed at twelve thousand dollars ($12,000.00), unless the same is sold by the circuit court commissioner before the final accounting, in which event the value thereof will, of course, be the price at which such property is sold.

"(8) In the accounting, the value of the Byron avenue property should be placed at six thousand five hundred dollars ($6,500.00), unless the same is sold before the final accounting, in which event the value thereof will be the price at which such property is sold."

The plaintiff in his bill of complaint did not mention the Byron avenue and Bethune avenue properties, nor the purchase of the two automobiles, nor the Waverly avenue lot transaction. The theory of his bill was that the oral agreement between himself and defendant Patrick E. Hurson (which he claims was not made till the fall of 1914) related only to the Cortland avenue transaction, and that the substance of the agreement was that he and Hurson were to purchase a certain brick-veneer four-family flat building then located on a certain lot on Cortland avenue in the village of Highland Park, in Wayne county, which the district of the public schools of Highland Park was contemplating purchasing as a school site; that Hurson was to supervise the work of removing the building from that lot and setting it up on another lot in the vicinity to be selected and purchased by them in the meantime; that plaintiff was to furnish the funds necessary to purchase the building and the new site and also to pay the expense of moving and relocating the building; and that any profits that might be realized out of the transaction were to be divided equally between the plaintiff and said defendant Hurson. The bill charged that the deed and land contract referred to in the foregoing findings of fact as having been executed by the defendants Brown to Hurson and wife covering this Cortland avenue property were obtained secretly and without plaintiff's knowledge or consent, by means of false representations by Hurson to the defendant George D. Brown, and prayed that the said deed and land contract be canceled and a new deed and land contract executed to the plaintiff in lieu and stead

thereof, subject only to the mortgage to the defendant Highland Park State Bank; that the Hursons be enjoined from collecting the rents or otherwise interfering with the management of the property, from conveying or incumbering the same and from withdrawing or using the unused balance of the amount loaned by the bank still remaining on deposit in said bank; that a receiver be appointed; that the property be sold; that an accounting be had; and that the rents and proceeds of sale of said property be divided and distributed in accordance with the respective rights of plaintiff and defendant Hurson under the agreement.

The answer and cross-bill of the Hursons denied the oral agreement as set forth in plaintiff's bill, but alleged that an oral agreement was entered into in the spring of 1914 in terms, substantially, as found by the trial judge. It then recited the several joint transactions under said agreement referred to in the findings of fact above quoted, claiming for the defendant Patrick E. Hurson a half interest in the profits of each of said transactions, except as to the Cortland avenue property, of which it alleged the Hursons were the sole and lawful owners, free from any claims or rights of the plaintiff under the oral agreement, by reason of the alleged fact that the plaintiff, in return for Mr. Hurson's having allowed him to take out of the operation of said oral agreement a proposed transaction involving the removal from one lot to another on Josephine avenue in the city of Detroit of a certain house, which plaintiff wished to acquire for himself as a residence, had agreed verbally to allow Hurson to take over the moving and relocating of this Cortland avenue flat building as his individual transaction, released from the operation of the agreement, provided Hurson repaid plaintiff all moneys plaintiff had or might advance in connection therewith. It was further alleged that plaintiff, in closing the transaction

for the purchase of the new site, was acting as Hurson's attorney, and that he inserted his own name in the land contract together with Hurson's without the latter's knowledge or consent, and presumably as security for the moneys advanced by plaintiff in the transaction; that Hurson financed the moving operations so far as he was able, but was obliged to borrow some amounts from plaintiff; and that as soon as he obtained a deed of the property and was able to borrow money from the bank on a mortgage he tendered plaintiff all amounts advanced by him in the matter, but that plaintiff refused to accept same; that Hurson later left in plaintiff's office a check for the amount of said advances (less the amount of a counterclaim by Hurson), which check plaintiff had neither cashed nor returned. The cross-plaintiffs claimed that no settlement had ever been had in connection with any of the joint transactions under the oral agreement, and prayed for an accounting in said matters; also for the appointment of a receiver for the Bethune and Byron avenue properties, and for an injunction restraining plaintiff from conveying or incumbering same.

The plaintiff denied Hurson's right to one-half of the profits in connection with the Byron and Bethune avenue properties, claiming that everything done by Hurson in supervising and assisting in the moving of these houses was done gratuitously and in contemplation of the purchase of the Cortland avenue property, in the profits of which alone Hurson was to have an interest.

A decree was entered, providing for the sale of the Cortland avenue property by a circuit court commissioner, for an accounting before such commissioner by both plaintiff and defendant Hurson of all their respective receipts and disbursements in connection with the transactions in question, in which accounting the rental value of the Bethune avenue property during

the time it has been occupied by the plaintiff shall be estimated and charged against him; and reserving further consideration of the case until after the taking of the account and application for further order or decree by the circuit court commissioner or any party to the case. The plaintiff and the defendants and cross-plaintiffs Patrick E. Hurson and Martha L. Hurson have appealed from this decree.

The disagreement between the parties in this case arises solely over disputed questions of fact. It is true, counsel for plaintiff makes the bare suggestion towards the close of his brief that the general oral agreement claimed by the defendant Hurson to exist between plaintiff and himself and the special oral agreement to release the Cortland avenue property from this general agreement are both within the purview of the statute of frauds, but no argument is advanced in support of this view and the point does not seem to be seriously taken. As to the oral agreement to release, the statement in plaintiff's brief that,—

"The agreement to surrender claimed by Hurson would certainly be an agreement for a transfer of an interest in lands,"

must have been an inadvertence on the part of counsel, for at the time this agreement is claimed to have been made, the lots to which the building was to be moved had not even been selected and the only tangible property involved was the building which had just been bought as a chattel under a bill of sale. The other agreement in question—the general agreement as testified to by Mr. Hurson—seems to us to be clearly of the class of oral agreements upheld by this court in *Carr* v. *Leavitt*, 54 Mich. 540, Hurson's claim as finally made being merely for one-half of the profits of the transactions as compensation for services rendered and not for any interest in lands. Moreover, although there is a dispute as to the date and scope

of the oral agreement, that agreement, whatever it was, is the foundation of plaintiff's bill of complaint, and he is therefore not in a position to question its validity, particularly when he is seeking relief in a court of equity and the invoking of the statute of frauds would operate inequitably upon the claimed rights of the defendants. We do not think there were any legal obstacles to bar the decision arrived at by the trial court.

We turn, then, to consider the disputed facts. Taking the testimony alone, as it appears in the printed record before us, if we assume that the witnesses on the opposing sides are equally reliable, we are unable to find any clear preponderance of evidence in favor of plaintiff as to the disputed facts alleged in his bill or in favor of the cross-plaintiffs as to the disputed facts set up in the cross-bill. The credibility of the respective witnesses, therefore, together with the general probabilities of the case in the light of all the facts and circumstances, must be the controlling factors in arriving at a decision, unless, as might perhaps be warranted, the court were simply to leave the parties where they have placed themselves by their negligence in allowing transactions of such a character to rest upon so slight and uncertain a foundation. While, as we have said, our former decisions have held such cases to be outside the letter of the statute of frauds, we think they are clearly tainted with the evil at which the statute was aimed. Transactions involving a series of dealings in real estate, the investment of considerable amounts of money, and the performance of services to be compensated out of the profits of the real estate when realized, especially where these operations are to extend over an indefinite period of time, should certainly never be allowed to be entered into on the basis of a mere vague verbal understanding, which, the moment any difficulty or dissatisfac-

tion arises, is almost certain to prove to be a misunderstanding.

In a case such as this, where the decision must turn almost entirely upon the relative credibility of the various persons who testified, very clear evidence of unreliability on the part of witnesses to material facts must appear in the record to justify this court in disturbing the findings of fact made by the trial judge, who had the advantage of listening to all the witnesses, observing their appearance and manner when testifying, and receiving that direct impression from their words and conduct which is such an important element in producing a conviction in the mind as to the truth or falsity of their statements. We have examined the testimony of all the witnesses with great care, and while we have observed in a number of instances some inaccuracies and contradictions in the answers of certain witnesses and some doubt is thrown upon certain of their statements by rebutting testimony, yet, on reading the testimony of these witnesses as a whole, as it stands in cold print, with no knowledge of the manner in which the testimony was given, there is nothing that impresses us that the statements of any one of the principal witnesses concerning the material facts in issue should be greatly discredited. Finding, therefore, nothing in the testimony itself that would incline us to accept the version of the transaction given by one side in preference to that insisted upon by the other, clearly we are not warranted in disturbing the findings of the circuit judge. He had the witnesses before him and received impressions from their testimony which resulted in his findings of fact. Moreover, judging merely by the probabilities of the case— what we would expect the average man to do under similar circumstances, or what circumstances would induce ordinary men to act in the way these parties did—we are inclined to think that the findings of the

lower court on the two principal points in controversy, viz., the date and scope of the oral agreement and whether or not the Cortland avenue property had been withdrawn from the oral agreement, are well made.

Accepting, therefore, the findings of the circuit judge as correct, we think his decree affords the proper remedy, and it is accordingly hereby affirmed, without costs to either party.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.