McNITT  v.  McNITT.

1. HUSBAND AND WIFE—ESTATES BY ENTIRETIES—WHEN CREATED.
   A tenancy by entireties can exist only in case the persons
   to whom the title passes are husband and wife at the
   time the instrument conferring title takes effect, and it
   is not created by a conveyance or devise to persons who
   subsequently marry.[1]

2. APPEAL AND ERROR—ON APPEAL CASE HEARD DE NOVO.
   On appeal a chancery case is heard *de novo*, and the
   Supreme Court, although it may be aided by the findings
   of the trial judge, is not bound thereby.[2]

3. HUSBAND AND WIFE — ESTATES BY ENTIRETIES — EVIDENCE —
   BURDEN OF PROOF.
   In a suit by a widow to establish a tenancy by the en-
   tireties, and title in herself as survivor of her husband,
   the burden of proof is upon her.[3]

4. SAME—EVIDENCE—SUFFICIENCY.
   Evidence *held*, insufficient to meet the burden of proof
   upon plaintiff to establish title to land in herself and
   husband as tenants by entireties.[4]

Appeal from Muskegon; Vanderwerp (John), J.
Submitted January 9, 1925.    (Docket No. 57.)    De-
cided April 3, 1925.

Bill by Eva McNitt against William McNitt and
others to determine plaintiffs' interest in certain real
estate.    From a decree dismissing the bill, plaintiff
appeals.    Affirmed.

*George H. Cross*, for plaintiff.
*Bunker & Rogoski*, for defendants.

MOORE, J.    The defendants in this case are the heirs

[1]Husband and Wife, 30 C. J. § 91; [2]Appeal and Error, 4 C.
J. §§ 2867, 2868; [3]Husband and Wife, 30 C. J. § 779 (1926 Anno);
[4]Id., 30 C. J. § 796 (1926, Anno).
   Authorities discussing the question of creation of tenancy by
the entireties are collated in a note in 30 L. R. A. 305.

at law of John McNitt and Daniel McNitt, and the administrator of the estate of Daniel McNitt, deceased.    The bill of complaint is filed to determine the interest of the plaintiff, widow of Daniel McNitt, in certain real estate.    Plaintiff was at one time married to a man by the name of Timmons but she separated from him in 1901.    In 1906 and previous thereto, plaintiff and Daniel McNitt were living together.    It is not shown whether a marriage ceremony had been performed between them; but they were known as husband and wife and they lived together until the death of Daniel McNitt in 1920.    In 1912, after the parties had lived together for more than six years, a marriage ceremony between the plaintiff and Daniel McNitt was performed in the city of Chicago.    John McNitt acquired title to the property in litigation on February 20, 1906, and it is the claim of plaintiff that, on or about that date, plaintiff and her husband, Daniel McNitt, entered into an oral contract with John McNitt to purchase the property for $600; that she and her husband at once went into possession of the property; that the full purchase price was subsequently paid to John McNitt; that she contributed the sum of $400 toward the payment of the purchase price; that it was agreed that the property should be conveyed to plaintiff and her husband jointly; but that no such deed was executed, or if executed was lost without being recorded.    John McNitt died January 2, 1909, and his estate was duly administered; but the property involved in this litigation was not inventoried or administered as a part of his estate.    It is claimed plaintiff and Daniel McNitt remained in possession of the property from 1906 until the death of Daniel McNitt, and since that time the plaintiff has continued in possession of the property.    Daniel McNitt died October 5, 1920, intestate.    Walter O. Thompson was appointed administra-

tor *de bonis non*. No inventory of the estate was filed until July 11, 1923. The inventory then filed included the property in litigation as a part of the estate. The administrator refused to recognize the plaintiff's interest in the property, and applied for an order from the probate court to sell the property for the payment of debts. This litigation then followed. Plaintiff was not sworn as a witness. It is stated the material facts to which she could have testified were equally within the knowledge of her deceased husband and his father and hence she was disqualified under 3 Comp. Laws 1915, § 12553. The oral proofs consist of the testimony of Gerald McNitt, son of the plaintiff by a prior marriage, and Sadie Place, mother of the plaintiff. The trial judge refused to believe the testimony of plaintiff's witnesses, and dismissed the bill of complaint. Plaintiff has appealed.

The only question is whether the trial judge erred in dismissing the bill of complaint.

The prayer of the bill of complaint was in part:

"(*b*) That by its decree this court may determine that the plaintiff is the absolute owner in fee simple of the whole of the premises hereinbefore described. * * *

"(*d*) That the plaintiff may have such other and such further relief in the premises as to the court shall seem just and proper."

The oral testimony was comparatively brief. Gerald McNitt, who was 10 years old at the time the conversation was had, testified in regard to the contract of purchase as follows:

"*Q*. Can you tell us what the conversation was between them with reference to this property?

"*A*. It was at the time the property was purchased by my grandfather, my grandfather McNitt bought this place from Homer Norton—and my father was pressed for funds at the time and he got my grandfather to buy it. My grandfather bought it and paid

for it, and he told my father as soon as he could, why, he would like to have him buy it from him and he would give him a deed, a joint deed.

"*Q.* What did Daniel McNitt and your mother say in regard to that?

"*A.* That was the agreement. My mother was there as well as Daniel McNitt.

"*Q.* Was there anything said, if you remember, about how the property should be deeded?

"*A.* It was to be a joint deed.

"*Q.* Did you know of any money being paid by either Daniel McNitt or your mother to John McNitt upon the purchase of this property?

"*A.* My father paid $200, something like that, and my mother paid the balance. The purchase price was $600. As near as I can remember my mother paid the balance in 1908 or 1909. It was some time after the original contract. * * * As near as I can fix the date it was in 1908 or 1909; one year or more before my grandfather died, he died in January."

Upon the cross-examination his recollection seemed to be very imperfect, but at no time did he testify that Daniel McNitt ever became able to buy the place from John McNitt, or that he ever did so.

The mother of the plaintiff testified in part:

"*Q.* Were you ever down there and heard any conversation between John McNitt and your daughter Eva, and Daniel McNitt?

"*A.* I was.

"*Q.* Tell us about when that was, and the circumstances?

"*A.* Well, I think it was the year 1908, as near as I can remember. They had been up to our house and I was talking about some sheep, and Dan said that he had some nice sheep that he would sell me, and we made the bargain, and he said I could leave them there until fall, if I wanted to, in the pasture, so after he went home awhile, he wrote to me and wanted me to send the money down for the sheep and I sent it. In the fall we went, my husband went and drove the team, and got the sheep, and while we were there is when I met Mr. McNitt, the old gentleman.

"*Q.* At that time was there anything that trans-

pired with reference to the property that they were occupying?

"*A*. Yes.    He came over; we were sitting at the dinner table when he came, and he commenced to talk. We talked about religion first.    He was an unbeliever; and him and I would argue over that.    I believe in the hereafter and he didn't and we talked about that. Then later he said he always liked to help his children, but he always expected to be paid back, and he spoke about this house and lot.    He said it worried him, he couldn't sleep, and talked about it, and we let my daughter have $400 to pay, and she handed it to him and he handed it to his father and said, 'Here is the money.'    Well, my daughter was blind, and I said, 'I want a deed made out to both.'    You know, so she would have something, and they said all right, the deed should be made that way.    My daughter was blind at that time; she handed him the money and he said all right, it should be fixed.    I furnished my daughter with the money, $400 and that paid up for the property in full.    *    *    *

"*Q*. Did you know when your daughter and Mr. McNitt were married?

"*A*. I wasn't present, but they told me.

"*Q*. When did they first go to living as husband and wife?

"*A*. 1906, I think it was; that is the first I knew of it.

"*Q*. Whether they were always known there as husband and wife?

"*A*. Yes, sir; from that time on."

Cross-examination.    By Mr. Rogoski:

"My daughter has been married twice.    She was first married to a man who called his name Timmons. They were married in Traverse City, I think.    She separated from him in 1901.    I couldn't tell where he is, I hope he is dead.    *    *    *

"*Q*. Do you know when your daughter and Daniel McNitt went through a pretended marriage ceremony?

"*A*. I think it was in 1906, as near as I can remember.    I might be mistaken one year or so, but as near as I can remember.

"*Q*. Then if it was in 1912 you are mistaken.

"*A*. I didn't say 1912, I said 1906.

"*Q.* So if it didn't take place in 1906 you don't know anything about it?

"*A.* It did take place in 1906.    I said I didn't see the ceremony performed.

"*Mr. Rogoski:* Have you here the marriage certificate that you introduced in probate court?    (Mr. Cross handed a paper to Mr. Rogoski.)

"*Mr. Rogoski:* Mark this defendants' Exhibit 1. The paper was marked defendants' Exhibit 1.    Offered in evidence and received without objection.

"*The Witness:* If I am mistaken in the year it is my mistake.    I don't mean to tell a lie.

"*Q.* Now, so if this occurred in 1912, the time you went down there was subsequent to 1912, wasn't it?

"*A.* Yes, it was 1908 when I was down there.

"*Q.* I say if this ceremony didn't take place until 1912, it was after that you went down there?

"*A.* No, it wasn't.    I think there is a mistake about that.    I don't think that is right.

"*Mr. Rogoski:* That is all."

Defendants' Exhibit 1.

"This is to certify that Daniel McNitt and Eva M. Egleston of Chicago and of Chicago were united by me in marriage on the 12th day of August, in the year of our Lord one thousand nine hundred and twelve, at Chicago, Illinois.

"FRANK A. McKEE,
Justice of the Peace."

The trial judge expressed himself as not believing anything that the witnesses said.    Counsel says, however, that the fact Mr. and Mrs. Daniel McNitt went into the possession of the property, and that after John McNitt died they were not disturbed in their possession, and the property was not inventoried as part of the estate of John McNitt, is corroborative of the oral testimony, and should entitle the plaintiff to a decree as prayed.    One trouble with this contention is that there is no proof that plaintiff and Daniel McNitt were husband and wife at the time of the alleged agreement, and of course under such circumstances there could be no tenancy by the entireties

which would pass the title in fee to the plaintiff upon the death of Daniel McNitt.

"A tenancy by entireties (or by the entirety) is essentially a joint tenancy, modified by the theory of the common law that the husband and wife are one person. This tenancy can exist only in case the persons to whom the title passes are husband and wife at the time the instrument conferring title takes effect, and it is not created by a conveyance or devise to persons who subsequently marry." 1 Tiffany on Real Property (2 Vol. Ed.), § 165.

It is true that this is a chancery case and it is heard *de novo* and this court is the ultimate trier of the facts and must pass upon the credibility of the witnesses; and although the court may be aided by the findings of the trial judge, it is not bound by them. *Lockwood* v. *Lockwood*, 220 Mich. 124. However, in this case we are asked for a decree that will pass title to real estate when no written instrument is produced, and when the parties to the alleged agreement are dead. The burden of proof is of course upon the plaintiff. We think she has failed to meet that burden. *Thompson* v. *Hurson*, 201 Mich. 685.

The defendants in their answers did not ask for affirmative relief. The bill of complaint was dismissed. If plaintiff has any interest in the real estate, we think it must be asserted in some other way.

The decree is affirmed, with costs to the appellees.

McDonald, C. J., and Clark, Bird, Sharpe, Steere, Fellows, and Wiest, JJ., concurred.