**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**CERTAIN REAL PROPERTY LOCATED AT 2525 LEROY LANE, WEST BLOOMFIELD, MICHIGAN, Defendant–Appellee,**

**Leah Marks, Claimant–Appellee.**

**No. 91–2174.**

United States Court of Appeals,
Sixth Circuit.

Argued June 18, 1992.

Decided Aug. 7, 1992.

Rehearing and Rehearing En Banc
Denied Oct. 21, 1992.

Peter A. Caplan, Asst. U.S. Attorney (argued and briefed), Detroit, Mich., for plaintiff-appellant.

Stephen J. Bock (argued and briefed), Liberson, Bloom, Bloom & Bock, South-

field, Mich., for defendant-appellee Leah Marks.

Before: MARTIN and SUHRHEINRICH, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Leah Marks appears before this court a second time because the United States is trying to seize, through operation of the federal forfeiture laws, up to one-half of the proceeds of the sale of a house that she and her ex-husband owned as tenants by the entirety. The government is appealing the district court decision to award Leah the entire proceeds of the sale of the house.

Leah's husband, Mitchell Marks, was convicted for violating federal drug laws. After Mitchell Marks' arrest, the government brought criminal and civil forfeiture actions against the Marks' property, which was the family home that the Marks owned as tenants by the entirety. The district court consolidated the forfeiture actions. During the forfeiture proceedings, Leah Marks and the government agreed to sell the property. The proceeds of the sale were placed in escrow, pending the outcome of this case. As part of the agreement, the parties retained the same interest in the proceeds that they had possessed in the original property prior to the sale. The government also stipulated that Leah was an "innocent owner" under 21 U.S.C. § 881, thereby protecting her interest from forfeiture.

In the first proceeding, the district court found that Leah held a legal interest in the property as a whole. The court held that the government could not take any part of the proceeds under the government's forfeiture action against Ms. Marks' husband. On appeal, we held that the relation-back provisions of the civil and criminal forfeiture statutes did not operate to convert the Marks' estate from a tenancy by the entirety into a tenancy in common. This court stated that even though the federal forfeiture statutes allowed the government to assume the husband's interest in the property, the forfeiture statutes did not alter the "essential characteristics" of the estate. We found that (1) the government was precluded from obtaining the husband's interest in the property unless Leah predeceased her husband *or* unless the entireties estate was otherwise terminated by divorce or joint conveyance in accordance with Michigan law; and (2) the government's interest in the property "is most analogous to the position occupied by a judgment creditor of one spouse under Michigan law." This court remanded the case to the district court to apply Michigan law and determine the nature of Leah's interest as it existed just prior to the initiation of the forfeiture proceedings. *United States v. Certain Real Property*, 910 F.2d 343 (6th Cir.1990), *cert. denied*, ——— U.S. ———, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991).

Apparently unbeknownst to the district court and to this court, while the original action was proceeding in the federal courts, Leah and Mitchell Marks engaged in divorce proceedings in a Michigan state court. Although there is some confusion as to when the government and the federal courts actually learned of the divorce proceedings, the decree in the Marks' divorce was final on November 8, 1988. This was the day after the first district court opinion was rendered in this matter but many months prior to our original decision. As part of the divorce property settlement, a Michigan state court awarded Leah Marks the entire home under Mich.Comp.Laws § 552.102.

On remand, the district court found that Leah Marks was entitled to all of the proceeds of the sale of the house. The district court based its decision on her Michigan state court divorce decree, which divided the property in such a way that Leah received the entire estate "free and clear of any and all claims or interest of the Defendant, Mitchell Marks...." The district court found that because Michigan statutes allow a divorce court to re-determine the nature of property held in its entirety, Leah owned the entire property as a whole by virtue of the divorce decree, and she held the property free of any interest by her ex-husband. Because the property was free

of her husband's interest, the court found that the property was also free of the United States' succeeding interest. The district court denied the government's motion for summary judgment and awarded the entire proceeds of the sale of the property to Leah. This second appeal followed.

■ In applying the federal forfeiture statutes, Congress has directed that the first step is to determine the legal interest of the petitioner in the subject property. *See* 21 U.S.C. § 853(n)(6). As we stated in our previous opinion in this case, we apply Michigan law to determine the property interests at issue. *Certain Real Property*, 910 F.2d at 347–48 ("We conclude that recognition of state laws governing property rights does not contravene the federal forfeiture scheme, and that the application of state law is the most appropriate method of determining the interest of an innocent owner under 21 U.S.C. § 881(a)(7)."). Thus, in order to resolve this case, we must examine Michigan property law concerning tenancy by the entireties. The concept of a tenancy by the entirety descends from the English feudal system of land tenures. Phipps, *Tenancy By Entireties*, 25 Temp. L.Q. 24 (1951). The unique aspects of a tenancy by the entirety have been recognized in Michigan law for more than a century. *See* Honigman, *Tenancy by Entirety in Michigan*, 5 Mich.S.B.J. 196 (1926). Of these long-established tenets of Michigan property law, the following are relevant to the case at bar. First, in Michigan, tenants by the entirety must be husband and wife. *Hoyt v. Winstanley*, 221 Mich. 515, 191 N.W. 213 (1922). This requirement is referred to as the unity of the person. In order to create a valid tenancy by the entireties, the unities of time, title, interest, possession, and person must exist. *See McNitt v. McNitt*, 230 Mich. 303, 203 N.W. 66 (1925); *Auditor General v. Fisher*, 84 Mich. 128, 47 N.W. 574 (1890). Second, under Michigan law, a judgment creditor of one spouse cannot levy against the entireties estate in satisfy a debt. *See Vinton v. Beamer*, 55 Mich. 559, 22 N.W. 40 (1885). Third, when a husband and wife receive a divorce, the estate converts to a tenancy in common, unless the court, by

virtue of Michigan's divorce statute, awards the property in a different fashion. Mich.Comp.Laws § 552.102.

■ The government argues that by virtue of the federal forfeiture statute and our prior opinion in this case, they stepped into Mitchell Marks' place and therefore, should receive one-half of the property. We disagree. As we stated in our prior opinion, the federal forfeiture statutes do not operate to destroy the fundamental characteristics given to real property by the states. *See Certain Real Property*, 910 F.2d at 349. To allow the United States to step into Mitchell Marks' place as a tenant by the entirety would destroy the tenancy by the entirety because the unities of time, title, and person would be violated. The government did not and could not possess Mitchell Marks' present interest in the tenancy by the entirety. The government's interest comes into being only when the tenancy by the entireties is destroyed either by death, divorce, or operation of Michigan law. When the tenancy by the entireties is destroyed, the government gets whatever Mitchell Marks possesses after the entireties estate is destroyed. In this case, by virtue of the divorce court's distribution of the property, Mitchell was left with no part of the property.

We are troubled, however, that the United States was not afforded the opportunity to argue about its interest in the entireties estate before the Michigan Circuit court that granted the divorce. We are also concerned that the divorce court did not have all the facts before it in making the property distribution. If the divorce court abused its discretion in dividing the property, then Mitchell may have been entitled to some part of the real property, with that part passing onto the United States under the federal forfeiture statute on the dissolution of the entireties estate.

To insure that the record is complete and to insure fairness to all, this case is again remanded to the district court for such evidence as is necessary to insure total disclosure to the Michigan Circuit court of all facts surrounding the entry of the di-

vorce decree. Such evidence may include, but is not limited to, who paid the mortgage, who maintained the property in a liveable fashion, are there minor children involved, as well as other matters that are normally considered by a trial court in a divorce proceeding.

KRUPANSKY, Senior Circuit Judge, concurring.

I concur in the majority opinion in this case only because of the existing precedent in this circuit enunciated in *United States v. Certain Real Property (Certain Real Property I)*, 910 F.2d 343 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991), a decision in which I did not concur. As I predicted in that dissent, and as the tortured history of this case illustrates, the federal forfeiture statutes require a uniform federal common law under which the government would receive an immediate divisible interest upon forfeiture in an erring defendant's real property regardless of the incidents of state law that attach to the estate of the owners of record or the recorded tenancy in which the property is held. A federally, uniformly imposed tenancy in common that preempts the myriad of divergent statutory tenancies and estates existing throughout the nation, in this case the state of Michigan's statutory indivisible tenancies in the entirety, would have permitted the government, in the instant case, to receive an immediate divisible interest in the real property here in issue and would have eliminated the entangling, burdensome custodial responsibilities imposed upon the government during the interim period of time between the date of forfeiture and the occurrence of a triggering condition that converts the property into a divisible estate.

The legal principle imposed in *Certain Real Property I* and in the opinion of this case perpetuates interminable delays fraught with unforeseeable, unpredictable complications, legal actions, and unnecessary continuing commitments of judicial resources between the criminal act of the erring spouse and the government's real-ization of its interest in the forfeited property. For example, in the instant action the government not only was required to monitor the sale of the property or the death of the innocent spouse, but should have asserted its interest in the forfeited property in a pending divorce action between the parties which had not been disclosed to the district court, the United States Attorney, or in the plaintiff's briefs or arguments during the first appellate review before this court. The disposition of that divorce proceeding, before the district court's initial decision, converted the survivorship estate into an immediately divisible tenancy in common by operation of law pursuant to Michigan statute. Michigan Compiled Laws § 552.102 (West 1988). The vital, withheld information concerning the divorce which presently prompts this court to remand this case to the district court for a third time for resolution, which resolution will undoubtedly result in a third appeal, demonstrates the total waste of time, money, effort, and judicial resources that has been spawned by the precedent enunciated in *Certain Real Property I.*