ZEIGEN *v.* ROISER.

1. HUSBAND AND WIFE—ESTATES BY ENTIRETIES—CONVEYANCES—INTEREST IN LAND.

> An assignment of a contract interest in land, held by a husband and wife by the entireties, signed by the husband alone, is void.

2. SPECIFIC PERFORMANCE—CONTRACT TO CONVEY—EXCHANGE OF PROPERTY—EQUITY—BURDEN OF PROOF.

> In proceedings for the specific performance of a contract to exchange equities in land contracts, where there is an irreconcilable conflict in the testimony of the various parties, evidence examined, and *held*, to sustain the finding of the court below that plaintiff had failed to sustain his case by the burden of proof.

Appeal from Oakland; Smith, J. Submitted January 18, 1918. (Docket No. 152.) Decided March 27, 1918.

Bill by Frederick H. Zeigen against Charles H. Roiser and wife, Florence S. Fox, and others, for the specific performance of a land contract. From a decree for defendants, plaintiff appeals. Affirmed.

*Jerome Probst* and *Pelton & McGee*, for plaintiff.

*Covert & Campbell*, for defendants Roiser.

*Charles R. Robertson*, for defendant Fox.

STONE, J. This case presents mainly questions of fact, which are much in dispute.

1. By his bill of complaint, plaintiff claims that in March, 1914, he was the owner of the interest of the vendee in a certain land contract made in 1906, by Henry F. Barnard of the first part, wherein and whereby said Barnard agreed to sell and convey to one Susan Gibbs, as party of the second part, certain

described lots known as Nos. 74-76 Prentis avenue, in the city of Detroit—said land contract being duly assigned to the plaintiff.

2. That in January, 1912, John Rich and wife, as parties of the first part, had made a certain land contract with the defendants Charles H. Roiser and Alice L. Roiser, his wife, of the second part, wherein and whereby said Rich and wife had agreed to sell to said defendants a certain parcel of land in the township of Royal Oak, county of Oakland, known as the 20-acre tract, duly described, on section 33 of said township.

3. That, on or about March 1, 1914, negotiations were entered into by and between the plaintiff and said defendants Roiser and wife, for the purpose of exchanging the equity of the plaintiff in said Prentis avenue property, for the equity of said defendants in said 20-acre tract in Royal Oak township, aforesaid; that such negotiations continued until on or about March 15, 1914, when they orally agreed to exchange said equities in said properties, said defendants Roiser and wife to take said Prentis avenue property, subject to an unpaid balance on said Barnard contract of $13,000 which they assumed and agreed to pay, and plaintiff to take said land in Royal Oak township subject to $3,500 unpaid upon said Rich contract. Each party to furnish abstracts.

4. That afterwards and on or about March 20, 1914, and in pursuance of the aforesaid verbal agreement, said defendants Roiser and wife, delivered to the plaintiff the aforesaid Rich contract, together with an assignment of said contract by said defendants Roiser and wife to the plaintiff, attached to and made a part of said contract, and a copy of the said assignment, signed by the said parties is set forth.

5. That at the time of the delivery of said Rich contract and assignment thereof to the plaintiff, he

delivered said Barnard contract duly assigned to said defendants Roiser and wife; but that at the request of said defendants said Barnard contract with assignment was returned and delivered to the plaintiff for safe keeping until abstracts should be furnished of said respective properties, and the titles made good.

6. That afterwards, it appearing that there would be some delay in getting said abstracts perfected, a written memorandum was made between said defendant Charles H. Roiser, acting for and on behalf of himself and wife, and the plaintiff, evidencing the terms and conditions of their said verbal agreement to exchange, as aforesaid, as to the furnishing of abstract and making good title to said properties, as well as in the settlement of differences on said exchange, specified in said oral agreement, a copy of which agreement, bearing date April 4, 1914, was attached to the bill of complaint, and being recorded in the office of the register of deeds of Oakland county, April 28, 1915.

7. That on or about December 10, 1914, said defendant Charles H. Roiser called at the office of the plaintiff, and asked to have said Rich contract a few days for the purpose of having said Rich indorse thereon all payments made thereon, so as to know the exact figures, and be able to figure the differences on said exchange, promising to return said contract, with all payments duly indorsed thereon, to the plaintiff, in a few days thereafter; that, relying upon said statement and promise, the plaintiff loaned said contract to said defendant Roiser; that about a week thereafter the plaintiff met and asked said defendant about the return of said contract, and he replied that he had been unable to find said Rich at home, but would do so soon, and would return said contract to the plaintiff within a week or two thereafter; but that he has never returned said contract to the plaintiff, but, on

the contrary, said defendant Charles H. Roiser, after tearing off said assignment thereof to the plaintiff, delivered said contract to the defendants A. O. Greenough and John J. Hagelstein, to whom said defendants Roiser and wife sold said 20-acre parcel on or about December 10, 1914. That said reason was a mere pretext; that at said time said Roiser had received an offer of a higher price for said land, and planned to obtain said contract and assignment thereof from the plaintiff by deceit and trickery. That the plaintiff has repeatedly asked said defendant Roiser for said contract, but he has refused to return the same.

The bill alleges that on or about November 17, 1915, said Rich, then a widower, executed and delivered to defendants Charles H. Roiser and Alice L. Roiser a warranty deed of the Royal Oak property in fulfillment of said contract; that on the same day said defendants deeded said premises to defendants Greenough and Hagelstein, and that the last-named defendants on the same day conveyed said property to defendant Florence S. Fox. That said purchasers had notice of plaintiff's rights and interest in said land, or knowledge of facts sufficient to put each of them on notice as to plaintiff's rights therein; that said last mentioned deeds were collusive and merely pretended, for the purpose of placing said land beyond the reach of the plaintiff, and that defendant Fox took said deed to her as a mere "dummy," and holds the same in trust for the other defendants; that very little money changed hands on said transfers, the pretended purchase prices being paid largely with mortgages, the amounts of which are set forth.

The bill further alleges that defendant Roiser and wife furnished plaintiff only the original abstract, which was not perfected; that the plaintiff was satisfied with the title; that he furnished the said defendant Roiser with an abstract of said Prentis avenue

property; that he expressed himself as satisfied with the same, and that the said exchange had been closed so far as the plaintiff was concerned, excepting only as to the figuring up and adjusting on a cash, or other satisfactory basis of the difference of taxes, interest on said properties, and balance unpaid on said contracts; and that plaintiff has been ready, able and willing to perform all things by him to be performed under said agreement; but said Roiser and wife refused, and still refuse, to arrange said difference according to said contract, and refuse to return said Rich contract with assignment thereof to the plaintiff, as agreed.

It is further claimed that all agreements to sell said premises to the other defendants, as well as said deeds, were subject to the prior sale by said defendant Roiser and wife to the plaintiff of said property.

The bill prays that an accounting may be had and taken of the difference to be paid by said parties on their said exchange, so as to make the land contract on said Prentis avenue property leave an unpaid balance of $13,000, and to leave an unpaid balance on said Rich contract of $3,500, according to said agreement to exchange said properties; also of the difference to be paid on and for taxes on said exchange to carry out the terms thereof.

That said Charles H. Roiser and Alice L. Roiser be required to surrender and deliver to the plaintiff said Rich contract with said assignment thereof, and that the plaintiff be declared to be the owner and holder of said contract, and of said land subject to the payment of said $3,500 with interest. which the plaintiff thereby offers to pay.

That the defendant Fox be required to execute and deliver to the plaintiff a deed of said land, and that the deeds and mortgages above described (excepting only said deed from Rich to Roiser) be declared null

and void and wholly inoperative as against the plaintiff's rights in the premises.

He prays for an injunction restraining defendants from conveying or mortgaging said land, and for general relief.

The answer of the defendant Charles H. Roiser denies each and every allegation of paragraphs 2, 4, 5, 6 and 7 of said bill of complaint, and alleges an entirely different state of facts relating to his dealings with the plaintiff. He avers that on the 4th day of April, 1914, he borrowed from plaintiff the sum of $150, and at the same time gave to plaintiff his 30-day note therefor, a copy of which note was attached to the answer. That at the time of the making and delivering of said promissory note said defendant left with the plaintiff, as collateral security for said loan, said Rich contract, and that said defendant received a receipt for said land contract from the plaintiff which remained in the possession of the plaintiff up to the time of the payment of said promissory note, on to wit, the 21st day of December, on which said date said Rich contract was returned and delivered to said defendant by the plaintiff. That on the same date said defendant and his wife borrowed the sum of $600 from one William Lakin, and gave to said Lakin a 90-day promissory note, and as collateral security to said Lakin, said defendant and wife deposited said Rich contract with said Lakin, and that said land contract remained in the possession of said Lakin approximately up to the time of the sale of the premises to said Greenough and Hagelstein.

He admits that on April 4th he alone entered into a written agreement with the plaintiff to exchange the interest of said defendant in said premises described in the Rich contract for the interest of said plaintiff in said Barnard contract; that at the time of the execution of said agreement between this defendant and

the plaintiff for the exchange of said properties, this defendant had it in mind that if said premises, known as No. 74-76 Prentis avenue, were as represented by the plaintiff, this defendant would then take the matter of the exchange of said properties up with his said wife, Alice L. Roiser, and would endeavor to induce her to join him in an agreement with the plaintiff for the exchange of said properties; that the said plaintiff then had in his possession the said Rich land contract, and well knew that the said land contract was for the purchase of said property by this defendant and his wife, Alice L. Roiser, by entirety, from said Rich and wife; and said plaintiff well knew at the time of the execution of said agreement of April 4th, that this defendant could not make any binding agreement in reference to the proposed exchange of said property; that said agreement was merely a preliminary one; that plaintiff then owed upon said Barnard contract a balance of about $13,900; and later said plaintiff repeatedly stated to this defendant that he could not arrange the payment of said $900 on said land contract, and admitted that it was not in his power to carry out his terms of said agreement, and finally suggested to said defendant that a new agreement be entered into between them for the exchange of other property for said Rich contract, but that said deal was never consummated; and that the plaintiff from the time of the payment of said promissory note, on said 21st day of December, 1914, treated said agreement of April 4th as of no further force and effect.

That this plaintiff, as complainant, filed a bill of complaint in the circuit court for the county of Oakland, in chancery, against this defendant alone, to enforce specific performance by this defendant of said agreement of April 4, 1914; that said case was put at issue, but was later discontinued by the complainant.

In that bill of complaint no reference was made by

the plaintiff to any assignment of said contract, nor was any claim made that said defendant Roiser and wife had ever signed any assignment of said Rich contract to the plaintiff; but that later, and on February 7, 1916, the present bill of complaint was filed, in which, for the first time, reference was made to the assignment of said contract; that the plaintiff at all times knew that the land contract for the purchase of said Rich premises was held by entirety by this defendant with his wife, Alice L. Roiser, and that the same was occupied by them as a homestead, and that it was not in the power of this defendant to convey alone any interest in said premises.

The separate answer of the defendant Alice L. Roiser consists of a general denial of the main allegations of the bill of complaint.

The answer of the other defendants is to the effect that they are *bona fide* purchasers, without notice, of said premises.

From what we have stated it is very apparent that the crucial and decisive question in the case is whether the defendant Alice L. Roiser ever signed the assignment of the Rich contract with any intention of exchanging the property therein described for the plaintiff's equity in the Barnard contract.

There is great conflict in the evidence in the case, the parties not agreeing upon any material matter.

The learned circuit judge, who heard the evidence and saw the witnesses, found that there was so much uncertainty surrounding the signing and execution of said assignment by defendant Alice L. Roiser that he would not pass a decree against her, and that there was nothing else in the case binding her to carry out an exchange of the properties; and, it being conceded by plaintiff's counsel that a decree should not pass against any of the defendants unless Mrs. Roiser was included, he dismissed the bill of complaint, without

prejudice to the plaintiff to bring an action at law against the defendant Charles H. Roiser. The plaintiff has appealed.

The testimony in the case is voluminous, but we have read the same with care, as well as all of the documentary evidence. Upon the hearing of the cause it was the claim of the defendants Charles H. Roiser and Alice L. Roiser, and they gave evidence tending to support the claim, that they were the occupants of said premises in Royal Oak township and had an equity therein, and that the plaintiff had an equity in the premises known as 74-76 Prentis avenue, with an apartment house thereon. It also appeared that the plaintiff owned some real estate next to the Roiser homestead in Royal Oak township, and had previously made a contract with Roiser to handle the same. There is no question that there was an interview between the plaintiff and Charles H. Roiser in the latter part of March, having in view an exchange of these properties. It was the claim of the defendant Charles H. Roiser that at this time his contract was in the hands of one Bolles, who had an agreement with defendant Roiser and his wife for the purchase of the property, dated in October, 1913. At the time the negotiations concerning the exchange of said properties were in progress, it became necessary for Roiser to borrow some money to pay some interest on an indebtedness of his to avoid the foreclosure of a mortgage. It is his claim and that of the witness Bolles, that he went to Mr. Bolles and obtained possession of the said Rich contract; that on the day following, to wit, April 4th, Roiser borrowed from the plaintiff $150, the same being represented by a check on the Peoples State Savings Bank payable to the order of Charles H. Roiser, and signed by Zeigen Construction Company, Frederick H. Zeigen, Manager. This loan was evidenced by a note given by Roiser to the plaintiff for said

sum, dated April 4, 1914, payable 30 days after date, across the end of which was written: "Land Contract on S. W. Cor. of E. ½ S. E. ¼ of Sec. 33, Royal Oak Twp. assigned as collateral."

Roiser also testified that he deposited with the plaintiff the Rich land contract which he had received from Bolles the day before, as collateral security for said loan and took plaintiff's receipt for the same, dated April 4, 1914, reading: "Received of Chas. Roiser. Land contract on N. E. cor. Mill road and Eight-Mile road, as collateral security for note of $150," and that he delivered to the plaintiff a blank assignment which he had some time before cut from a Burton contract, and had had his wife sign in blank in case Mr. Bolles needed it to complete any deal which he might make; that this assignment was in blank with the exception of the name of Alice L. Roiser, and that he, Roiser, added his signature to it before turning it over to the plaintiff; that at the time it went out of his hands it had simply the two signatures upon it, and, except the printing, there was no other writing thereon. He claims that it was the intention that this contract was to be in the hands of the plaintiff as collateral for said loan only. It is not denied by the defendant Charles H. Roiser that on the same day, April 4, 1914, he alone had the negotiations with the plaintiff in relation to the proposed exchange of properties which culminated in the agreement of that date; Mrs. Roiser not being a party thereto or in any other way alluded to in said contract. He further testified that the note was given for the loan of $150, and did not have anything to do with the balancing up of differences on the proposed exchange of property. He further testified that the plaintiff never tendered to him any assignment of his interest in the Prentis avenue property, and never tendered to, or showed him any abstract of that prop-

200—Mich.—22.

erty; and that the plaintiff never afterward told him that he was ready to go on with the deal.

It further appears that under date of November 27, 1914, the plaintiff, upon one of the letter-heads of his company, wrote to the defendant Charles H. Roiser a letter stating:

"Your note for $150 is long overdue, and as there does not seem any hope of making other arrangements, kindly call and pay same or sign a new and regular banking collateral note to replace the other."

Roiser also received letters from plaintiff dated December 8 and 17, 1914, reading, respectively, as follows:

."Kindly call at this office and sign note. If you do not do this we will have to take necessary steps to foreclose previous note."

The other:

"Kindly call at once with that note, must have it today so I can square up my books."

Inclosed with one of said letters was an unsigned collateral note dated December 1, 1914, for the sum of $150 payable 30 days after date, to the order of Fred H. Zeigen, and mentioning the deposit and pledge with him, as collateral security for the payment of said note and any other indebtedness, the Rich contract. These letters were on letter-heads of the Zeigen Construction Company, and signed by typewriter.

It appears that on December 21st, Roiser paid the $150 and interest by a check for $156, dated December 21, 1914, and it is the testimony of the defendant Roiser that at that time the Rich contract was returned to him by the plaintiff; that he did not open said contract at the time it was returned to him, but on his return home he opened it and found the assignment filled out and attached to it by glue. Roiser claims that he then, in the presence of his wife, tore

off the assignment from the Rich contract, and soon thereafter he assigned it to William Lakin, from whom he borrowed money.

It is undisputed that on July 8, 1915, the plaintiff, as complainant, filed a bill of complaint against the defendant Charles H. Roiser alone, for the specific performance of the contract of April 4, 1914. Mrs. Roiser was not made a party thereto, nor was there any allusion to the claim that an assignment had ever been made or signed by her.

Upon learning the fact that Mrs. Roiser had not been a party to said contract, that suit was discontinued. There is no question that during all these claimed negotiations the plaintiff knew that the interest of the defendant Roiser and wife in the premises described in the Rich contract was that of owners by the entireties, and that the said premises were at all times occupied by said defendants as a homestead.

The defendant Mrs. Roiser testified that she had had no acquaintance with the plaintiff, and had never seen him until the hearing. He had testified that he knew her and had called at the said defendants' home on the premises in Royal Oak township and had talked with her about the exchange of the properties. She was shown the said assignment; the following occurred:

"*Q.* Now, I hand you exhibit 2 which has your name, Alice L. Roiser, on it, and will ask you if that is your signature?

"*A.* Yes, sir. At the time I signed it, it had nothing but my signature and the printing. It, exhibit 2, at that time was a paper by itself, and was not attached to any other paper.

"*Q.* Now I show you a place on exhibit 1 (Rich contract) where it purports to be attached. Was exhibit 2 pasted on exhibit 1 when you signed it?

"*A.* It was not.

"*Q.* Was the land contract, exhibit 1, present when you signed that?

"*A.* It was not. I did not sign exhibit 2 with any intention of transferring to Fred H. Zeigen any interest in our property, the 21-acre farm.

"*Q.* Did Mr. Roiser, your husband, say to you when he asked you to sign this what he was going to do with it?

"*A.* He thought he might need my signature to borrow $150 from Mr. Zeigen.

"*Q.* Was his signature on there when you signed it?

"*A.* No, sir. I remember seeing exhibit 2 attached to exhibit 1 after Mr. Roiser brought it back from Mr. Zeigen. He did not know it until he got it in the house. He opened it in front of me and found out. That was about April 4th; I think it was on the 3d.

"*Q.* When you say Roiser brought exhibit 2 attached on the contract exhibit 1, was it before or after the note for the money had been paid? (No answer.)

"*Q.* Did you know about borrowing this $150.

"*A.* Yes, sir. Mr. Roiser did not have the note with him, exhibit D, when he showed me exhibit 2.

"*Q.* Do you know whether he showed you the note at that time?

"*A.* I don't remember."

There is no claim that any consideration passed to Mrs. Roiser. The claimed assignment of the Barnard contract was to Charles H. Roiser alone. The plaintiff's testimony tended to support the allegations of his bill of complaint.

There is an irreconcilable conflict in the testimony of these various parties. It is manifest that there was either false testimony, or that some of the witnesses were at least greatly mistaken in their testimony. The circuit judge saw these witnesses and heard them testify. There are some things in the conduct of the parties which have controlling influence in disposing of the case. The plaintiff appears to be a man of intelligence and acquainted with business affairs. He was a prolific letter writer and put in evidence many of his own letters, which were self-serving in their character, and have no probative force. His conduct

in filing the first bill of complaint against the defendant Charles H. Roiser alone, without making any claim that he had, or ever had had in his possession, any assignment of the Rich contract signed by Mrs. Roiser, is very significant. It is almost inconceivable that a man possessing his acquaintance with real estate affairs, and knowing as he did that the premises were held by said defendants as tenants by the entireties, that he should not have seen and appreciated the importance of alleging the possession of the assignment of Mrs. Roiser if he supposed at that time any such paper was in existence, or that it was intended to be used in the proposed exchange of properties.

Full faith and credit cannot be given to the testimony of these parties as a whole upon either side; but, after a careful examination of the entire record, we find ourselves in so much doubt as to whether Mrs. Roiser ever signed the assignment with the intention that it should have the effect of assigning to plaintiff the Rich contract, in exchange of that property for the Barnard property, that we are constrained to agree with the trial court in holding that the plaintiff has not sustained the burden of proof resting upon him, and that the decree below should be affirmed.

It is hardly necessary to refer to authorities in support of the proposition that property held as this property was, could not be conveyed, or any interest therein conveyed without the wife joining with the husband. We need cite but a single case, that of *Auditor General* v. *Fisher*, 84 Mich. 128, and cases there cited, where it is held, in substance, that the interest of a husband and wife in a land contract in which their names appear as vendees, is an entirety and not a tenancy in common. This view of the case renders it unnecessary to consider whether the other defendants are *bona fide* purchasers or not of these premises.

There are innumerable circumstances upon both sides which we have considered and that might be referred to, but it is sufficient to say that, in our opinion, the plaintiff has failed to make out a case against defendant Alice L. Roiser, and that the decree below should be affirmed with costs to the defendants.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.