**Sandra L. CRAFT, Plaintiff–Appellant/Cross–Appellee,**

v.

**The UNITED STATES of America, acting Through the COMMISSIONER OF INTERNAL REVENUE, Defendant–Appellee/Cross–Appellant.**

Nos. 96–1038, 96–1039.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 16, 1997.

Decided April 1, 1998.

Jeffrey Alan Moyer (argued and briefed), Donovan, Love & Twinney, Grand Rapids, MI, for Plaintiff–Appellant/Cross–Appellee.

Gary R. Allen, Acting Chief, David English Carmack (argued and briefed), Sara S. Holderness (briefed), Marion E.M. Erickson, U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for Defendant–Appellee/Cross–Appellant.

Before: RYAN, SUHRHEINRICH, and COLE, Circuit Judges.

COLE, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. RYAN, J. (pp. 645–649), delivered a separate concurring opinion.

## OPINION

COLE, Circuit Judge.

Sandra Craft appeals the district court's order granting summary judgment in favor of the United States, in which the district court found that a federal tax lien filed against the property of Sandra's husband for his individual unpaid tax liabilities attached to property held by Sandra and her husband, first as tenants by the entirety and then jointly conveyed to Sandra. The United States, in turn, cross-appeals the district court's determinations of when the lien attached and the value of Sandra's husband's interest in the property. For the following reasons, we **REVERSE** the district court's grant of summary judgment in favor of the United States and **REMAND** for further proceedings in accordance with this opinion.

### I.

Sandra Craft and her husband, Don, purchased real property located at 2656 Berwyck Road in Grand Rapids, Michigan (hereinafter the "Berwyck Property") as tenants by the entirety on May 26, 1972 for $48,000, encumbered by a $37,000 mortgage. Don failed to file income tax returns for the taxable years 1979 through 1986. The Internal Revenue Service accordingly prepared substitute income tax returns for these years as permitted by the provisions of 26 U.S.C. § 6020(b) and assessed $482,446.73 in unpaid tax liabilities against him. The IRS advised Don of these liabilities in 1988; Don nonetheless failed to pay these assessments. The IRS then filed a notice of federal tax lien on March 30, 1989 against all of Don's property or rights in property with the Register of Deeds in Kent County, Michigan.

Don and Sandra thereafter executed a quitclaim deed on the Berwyck Property, transferring the property to Sandra in exchange for one dollar on August 28, 1989. On January 30, 1992, Don filed a petition for

relief under Chapter 7 of the Bankruptcy Code. The bankruptcy court entered a discharge order on June 1, 1992 and closed the case on June 11, 1992.

Sometime later, Sandra entered into a contract to sell the property, but a title search revealed the IRS's lien and prevented the sale. Upon Sandra's request, the IRS refused to release the lien. Don then filed a motion to reopen the bankruptcy case on August 14, 1992, and also filed an adversary complaint against the IRS that sought to determine the dischargeability of the federal tax lien. Although the bankruptcy court reopened the case, it determined on January 27, 1993 that it did not have jurisdiction to determine the validity of the government's lien on the Berwyck Property because the property never had become a part of Don's bankruptcy estate. The bankruptcy court thus closed the case for a second time.

The IRS subsequently agreed to release its lien on the property to enable Sandra to sell it. The IRS conditioned its release on the establishment of a non-interest-bearing escrow account containing fifty percent of the proceeds of the sale and subject to the same right, title, and interest that the federal tax lien had on the property. Sandra finally sold the property in June 1992 and received half the proceeds, amounting to $59,944.10.

On April 23, 1993, Sandra filed a complaint pursuant to 28 U.S.C. § 2410(a) in the United States District Court for the Western District of Michigan against the United States, seeking to quiet title to the proceeds in the escrow account. The government asserted in response that the federal tax lien attached to Don's interest in the property, even though Don and Sandra had held the property as tenants by the entirety, and that it was entitled to half the proceeds from the sale of the property. The government further asserted that Don's conveyance to his wife was fraudulent.

Sandra filed a motion for summary judgment on September 10, 1993, arguing that the completion of the bankruptcy proceedings estopped the government's ability to bring an action for fraudulent conveyance. On September 13, 1993, the government also filed a motion for summary judgment, contending that the federal tax lien had attached to Don's interest in the property.

Following a hearing on the parties' motions on July 21, 1994, the district court issued an opinion and order on September 12, 1994, denying Sandra's motion for summary judgment and granting the government's motion. The district court found that the federal tax lien attached to the property at the time Don and Sandra conveyed the property to Sandra, stating, in essence, that this conveyance effectively: (1) terminated the tenancy by the entirety; (2) after which, each spouse owned an equal one-half interest; and (3) was followed by the conveyance of the property to Sandra. The federal tax lien thus attached at the moment in time that Don possessed a separate one-half interest in the property.

On September 22, 1994, Sandra filed four motions: the first sought either to amend the judgment to include the conclusions of law supporting denial of her motion for judgment against the government's action for fraudulent conveyance, or, in the alternative, a new trial; the second sought to amend the judgment to include a determination of the value of Don's interest in the property on the date when Don and Sandra terminated the tenancy by the entirety; the third sought to refer the case to the bankruptcy court for it to make this determination; and, the fourth sought to stay execution of the judgment pending resolution of the other motions.

The district court entered another opinion and order on November 17, 1994, denying Sandra's first motion and stating that, having resolved the matter on other grounds, it did not need to decide whether a fraudulent conveyance had occurred. However, the court granted Sandra's second motion, concluding that further proceedings were necessary to determine the value of Don's interest at the time of the termination of his joint tenancy. Still, the court found that it, and not the bankruptcy court, was the proper forum to make this determination and thus denied Sandra's third motion. Finally, the court granted Sandra's fourth motion and stayed execution of the judgment.

Following a telephonic hearing on September 11, 1995, the district court issued an opinion on October 26, 1995, finding that the government held a valid lien on the interest Don held in the property on August 28, 1989—the date of the termination of the entireties estate and the subsequent conveyance to Sandra. The parties stipulated that the property had a fair market value of $120,000 and an outstanding mortgage balance of $19,412.12 on August 28, 1989. The district court thus determined that Don's interest in the property at the time of the conveyance was $50,293.94 and entered a final judgment awarding the government this amount.

Sandra timely filed her appeal on December 22, 1995. The government timely filed its notice of cross-appeal on December 26, 1995.

## II.

We review de novo a district court's grant of summary judgment. *Harrow Prods., Inc. v. Liberty Mutual Ins. Co.*, 64 F.3d 1015 (6th Cir.1995); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995). Summary judgment is appropriate if the record shows "that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We assess the record in the light most favorable to the non-movant, drawing all reasonable inferences in its favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).

## III.

### A.

The Internal Revenue Code provides for the creation of a federal tax lien on a taxpayer's property, stating that: "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount … shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. Under the succeeding section, the Code further provides that the lien generally arises when the assessment is made, and it continues until the

taxpayer's liability "is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

Federal tax law "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). Thus, in order to determine whether property is subject to a federal tax lien, "'state law controls in determining the nature of the legal interest which the taxpayer had in the property.'" *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960) (quoting *Morgan v. Commissioner*, 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940)). " '[O]nce it has been determined that state law creates sufficient interest in the [taxpayer] to satisfy the requirements of [the statute], state law is inoperative,' and the tax consequences thenceforth are dictated by federal law." *United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985) (quoting *Bess*, 357 U.S. at 56–57, 78 S.Ct. at 1057–58). Under federal tax law, the government's tax liens attach to every interest in property a taxpayer might have, regardless of whether that interest is less than full ownership or is only one among several claims of ownership. *United States v. Safeco Ins. Co. of America, Inc.*, 870 F.2d 338, 341 (6th Cir.1989) (citing *National Bank of Commerce*, 472 U.S. at 725, 730, 105 S.Ct. at 2926–27, 2929).

### B.

In the present case, Sandra and her husband held the Berwyck Property as tenants by the entirety. Under Michigan law, a tenancy by the entirety can be held only by a husband and wife, who possess an interest in the property under single title with a right of survivorship. *See Sanford v. Bertrau*, 204 Mich. 244, 169 N.W. 880 (1918); *Matter of Grosslight*, 757 F.2d 773, 775 (6th Cir.1985). In Michigan, a tenancy by the entirety can be created only by a written instrument of conveyance, which produces unity of persons, time, title, interest, and possession. *See Rogers v. Rogers*, 136 Mich.

App. 125, 356 N.W.2d 288, 292–93 (1984). Neither husband nor wife acting alone can alienate any interest in the property, nor can creditors of one spouse levy upon the property. *See Grosslight,* 757 F.2d at 773. Further, creditors of one spouse cannot reach that spouse's share of proceeds from a foreclosure sale of an entireties property. *See Muskegon Lumber & Fuel Co. v. Johnson,* 338 Mich. 655, 62 N.W.2d 619, 623 (1954). If a marriage terminates in divorce, however, Michigan law converts an entireties estate into a tenancy in common by operation of statute. *See* M.C.L.A. § 552.102; *United States v. Certain Real Property Located at 2525 Leroy Lane,* 910 F.2d 343, 351 (6th Cir.1990) *("Leroy Lane I").* Husband and wife can also terminate an entireties estate by joint conveyance of the property by husband and wife. *See Leroy Lane I,* 910 F.2d at 351.

Although the government may levy entireties property for nonpayment of real estate taxes on the real property itself under Michigan law, *see, e.g., Robbins v. Barron,* 32 Mich. 36 (1875), we have held that the federal government may not, under Michigan law, attach a lien to the entireties property to satisfy the personal tax liability of a single spouse. *See Cole v. Cardoza,* 441 F.2d 1337, 1343 (6th Cir.1971). In *Cole,* the IRS filed a lien against property held by a husband and wife as tenants by the entirety for unpaid tax assessments against the husband. *See id.* at 1338. We held that:

> the federal tax lien does not attach to the subject property owned by [a husband] and [wife] by the entirety, because the Government's tax lien is against [the husband] only. If the lien constitutes a cloud on the title to the property, [husband and wife] are therefore entitled to have the lien declared a nullity as to the property.

*Id.* at 1343. In *Cole,* we concluded that "the lien is without legal effect as it pertains to [the husband's and wife's] house." *Id.* at 1344.

After *Cole,* we had occasion to consider again the entireties estate under Michigan law in *Leroy Lane I. See* 910 F.2d at 343. In that case, the United States seized entireties property under a criminal forfeiture statute; however, the district court awarded all the proceeds from the forced sale of the property to the innocent spouse. *See id.* at 344. On appeal, we found that the government's position with respect to the forfeiture was most analogous to the position of a judgment creditor of one spouse. *See id.* at 351. In discussing the entireties estate, we reiterated that "entireties property may not be attached to satisfy the personal tax liability of a single spouse," *id.* at 350 (citing *Cole,* 441 F.2d at 1343), and noted that the innocent spouse had "not only an indivisible interest in the entireties property, but also a survivorship interest which would entitle her to sole ownership of the property upon her husband's death." *Id.* at 347.

Upon remand, the district court, having discovered that the couple divorced, again awarded all the proceeds to the innocent spouse based on the division of property as set out in the divorce decree. *See United States v. Certain Real Property Located at 2525 Leroy Lane,* 972 F.2d 136, 137 (6th Cir.1992) *("Leroy Lane II").* In *Leroy Lane II,* we again reiterated that, under Michigan law, a judgment creditor cannot levy against the entireties estate to satisfy one spouse's debt and further noted that the government's interest does not come into being until the entireties estate is destroyed. *See* 972 F.2d at 138. We thus held that the government was entitled only to whatever interest the debtor-spouse held after the entireties estate was destroyed; in *Leroy Lane II,* that was a zero amount because the debtor-spouse received no interest in the property pursuant to the divorce decree.[1] *See id.*

### C.

Turning to the present case, Sandra argues on appeal that *Cole* remains controlling authority and that because Michigan sub-

---

1. We nonetheless voiced concern about the United States' lack of opportunity to assert its entireties interest prior to the Michigan Circuit Court's grant of the divorce and remanded the case for such evidence as was necessary to insure total disclosure to the Michigan Circuit Court. *See Leroy Lane II,* 972 F.2d at 138.

stantive real property law has not changed, the IRS's tax lien could not attach to Don's interest in the Berwyck Property. It was error, Sandra continues, for the district court to find that the lien attached because it was a nullity as to the entireties property. Thus, Sandra disputes the district court's finding that upon the joint conveyance of the Berwyck Property to Sandra, the tenancy by the entirety was terminated and Don—for a moment in time—owned a one-half interest in the property to which the lien could attach.

The United States, on the other hand, goes a step further than the district court, contending that the lien attached to the Berwyck Property at the time the lien arose. In so arguing, the United States relies on two Supreme Court decisions in which the federal government's interests have trumped state law. *See United States v. Irvine*, 511 U.S. 224, 114 S.Ct. 1473, 128 L.Ed.2d 168 (1994); *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983).

The United States cites *Irvine* for the proposition that federal laws cannot be avoided or "struck blind" by state-law legal fictions. 511 U.S. at 240, 114 S.Ct. at 1482. *Irvine* addressed the issue of whether a taxpayer's disclaimer of her remainder interest in a trust—which caused her interest to be distributed to her children—resulted in a taxable gift. *See id.* The taxpayer argued that under Minnesota law, an effective disclaimer was valid ab initio, as if the disclaiming party never owned the property; thus, there was no taxable transfer. *See id.* at 227–28, 114 S.Ct. at 1475–76. The Supreme Court disagreed. In citing *Irvine,* the government thus contends that Michigan's recognition of the entireties estate—like Minnesota's disclaimer—is invalid because it is a legal fiction that facilitates the circumvention of federal tax laws.

In *Rodgers,* a case also cited by the government, the Court held that homestead rights under Texas law did not protect property—or a nondelinquent spouse—from in rem proceedings under 26 U.S.C. § 7403. *See* 461 U.S. at 692–700, 103 S.Ct. at 2142–46. The Court based its ruling on a broad interpretation of the tax laws, which permitted the government to "subject any property, of

whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability." *Id.* at 692, 103 S.Ct. at 2142. The Court did, however, formulate a mechanism whereby the nondelinquent spouse would be compensated. *See id.* at 710–11, 103 S.Ct. at 2151–52. Moreover, the Court recognized that tenancies by the entirety posed a problem distinct from that of homestead estates, in that neither spouse owns an independent interest in an entireties property while both spouses own independent interests in a homestead estate. *See id.* at 702 n. 31, 103 S.Ct. at 2147 n. 31.

We are not persuaded that the Supreme Court decisions cited by the United States have any effect whatsoever on the government's ability to attach a lien to an entireties estate, because these cases do not alter the basic tenet that state law governs the issue of whether any property interests exist in the first place. *See id.* at 683, 103 S.Ct. at 2137. *Irvine* and *Rodgers* stand for the proposition that once a property interest exists under state law, state law cannot interfere with attachment of a lien to that property interest—a matter that is governed by federal law. *See id.* *Irvine* and *Rodgers* do not support the proposition that federal law can be used to trump a state's definition of a property interest.

■ In Michigan, it is well established that one spouse does not possess a separate interest in an entireties property. *See, e.g., Rogers,* 356 N.W.2d at 292–93. This principle of Michigan law has not been overruled by Michigan courts, nor trumped by federal law, despite the United States' arguments to the contrary. Because Michigan law does not recognize one spouse's separate interest in an entireties estate, a federal tax lien against one spouse cannot attach to property held by that spouse as an entireties estate.

#### D.

■ In the alternative, the government argues—and the district court held—that upon the conveyance of the Berwyck Property to Sandra, the entireties estate terminated and Don, for a transitory moment, had an

undivided one-half interest in the property, to which the lien could attach.

Although the entireties estate was terminated upon conveyance of the Berwyck Property to Sandra, Don's interest in the property terminated at the same time. We are unaware of any precedent indicating that an entireties estate is automatically transformed into a tenancy in common as an intermediary step in the conveyance of the property. To the contrary, it is clear that at the time the entireties estate terminated, Sandra was vested "with full and complete title." *Hearns*, 53 N.W.2d at 320. Thus, Don never held an interest in the Berwyck Property to which the United States' lien could attach.

### E.

■ Despite our conclusion that the IRS lien could not attach to the entireties property per se, an issue remains regarding whether the lien attached to any inchoate interest that Don possessed in the entireties property. It is axiomatic that a federal tax lien can attach to "rights to property" as well as to the property itself. *See, e.g., National Bank of Commerce*, 472 U.S. at 730, 105 S.Ct. at 2929. It follows that a federal tax lien can attach to a future or contingent interest in property. *See, e.g., Safeco Ins. Co.*, 870 F.2d at 341. Although federal law controls whether an interest constitutes such a "right to property," *see National Bank of Commerce*, 472 U.S. at 727, 105 S.Ct. at 2933 (citation omitted), state law determines the nature of the legal interest which a taxpayer has in a property. *See Aquilino*, 363 U.S. at 513, 80 S.Ct. at 1280. Under federal law, then, any separate future interest that Don had in the Berwyck Property would be subject to attachment; however, the nature of that interest must be determined by Michigan law.

■ Michigan law does not recognize a severable future interest held by one spouse in an entireties property. *See Sanford v. Bertrau*, 204 Mich. 244, 169 N.W. 880, 881 (1918) ("We think the better doctrine is that the right of survivorship is merely an incident of an estate by entirety, and does not constitute a remainder, either vested or contingent."); *see also Budwit v. Herr*, 339

Mich. 265, 63 N.W.2d 841, 844 (1954) (citing *Sanford*, 169 N.W. at 881). *But see Leroy Lane I*, 910 F.2d at 352 ("[W]e have found no cases which would preclude the attachment of a creditor's lien on one spouse's interest which could be satisfied to the extent of that spouse's interest upon the termination of the entireties estate."). Although statements in *Leroy Lane I* arguably might be construed to indicate the existence of a future interest subject to attachment in an entireties estate, *see Fischre v. United States*, 852 F.Supp. 628, 630 (W.D.Mich.1994), we are bound to define Don's future interests in the Berwyck Property under Michigan law. *See Aquilino*, 363 U.S. at 513, 80 S.Ct. at 1280. Michigan law, as set out by the Michigan Supreme Court in *Sanford*, has never been overruled. Accordingly, under Michigan law, Don did not possess a separate future interest in the Berwyck Property; therefore, the federal tax lien could not attach to a future interest that did not exist under Michigan law.

### IV.

■ Despite the fact that the tax lien did not attach to the Berwyck Property, there remains an issue of whether a fraudulent conveyance occurred in this case, an issue that the district court did not address. Under Michigan law, one spouse cannot use the doctrine of tenancy by the entirety to defeat the rights of a judgment creditor. *See McCaslin v. Schouten*, 294 Mich. 180, 292 N.W. 696, 698 (1940); *Morris v. Wolfe*, 48 Mich.App. 40, 210 N.W.2d 16, 17 (1973). Such a fraudulent transfer can be set aside. *See* Mich. Comp. Laws § 566.19(1).

The issue of whether a fraudulent conveyance occurred in this case is a matter that should be determined by the district court. If the conveyance was fraudulent and therefore set aside, the IRS could be entitled to half the proceeds of the June 1992 sale, or $59,944.10. Accordingly, upon remand, the district court should consider whether the Berwyck Property was transferred for fraudulent purposes.

### V.

For the foregoing reasons, we **REVERSE** the district court's grant of summary judg-

ment in favor of the United States, in which the district court determined that the United States' tax lien attached to entireties property at the time that Sandra and Don Craft conveyed the property to Sandra, and **RE-MAND** to the district court for further proceedings in accordance with this opinion.

RYAN, Circuit Judge, concurring.

In my judgment, there can be no doubt that Don Craft had valuable property interests in the 2656 Berwyck Road home and that he ceded those interests for little or no consideration, most likely intending to defeat the IRS lien at issue here. Binding authority, sound reasoning, and equitable principles require that the IRS be awarded *some* portion of the proceeds of the sale of the 2656 Berwyck home if Don Craft paid for entirety property instead of paying his taxes, and then transferred his interest in the property to his wife to avoid the consequences of his tax delinquency. I agree with the majority that summary judgment should not have been granted and that this case should be remanded for further proceedings; however, the remand should be for the sole purpose of determining whether Don Craft's conduct was fraudulent.

### I.

The majority relies on *Cole v. Cardoza*, 441 F.2d 1337 (6th Cir.1971), in holding that "a federal tax lien cannot attach to property held as a tenancy by the entirety," and thus that the IRS could have no interest in the Berwyck home. However, binding cases decided since 1971 clearly state a different doctrine: (1) state property law determines which rights, in the bundle of rights we call "property," a person may exercise; (2) an IRS lien attaches to *all* those rights; (3) and state-law "fictions" cannot serve to defeat a valid lien. In this case, Don Craft had a contingent remainder. He had a right to the entire Berwyck property if his wife predeceased him, and he had a right to half the proceeds of the sale or lease of the home if the property were ever sold or leased. Although Don Craft did not have the whole bundle of property rights, it cannot be denied

that he had some of them. And, most assuredly, the IRS could attach these rights.

Pursuant to the Internal Revenue Code, the IRS *must* attach a tax lien to all property or rights to property, real or personal, of any person who neglects or refuses to pay his income tax after demand. *See* 26 U.S.C. § 6321. As the Supreme Court has noted, Congress intended by this provision "to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce*, 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985). In fact, " '[s]tronger language could hardly have been selected to reveal a purpose to assure the collection of taxes.' " *Id.* at 720, 105 S.Ct. at 2924 (citation omitted). Although state law must be relied on in determining what constitutes "property or rights to property" attachable by the IRS, this is hardly surprising considering the fact that there is no federal law of property. *See United States v. Certain Real Property Located at 2525 Leroy Lane*, 910 F.2d 343, 347, 351 (6th Cir.1990) (*Leroy I* ). It also should be no surprise that state-law doctrines that would prevent ordinary creditors from reaching state-defined interests cannot prevent a federal tax lien from attaching. *See United States v. Irvine*, 511 U.S. 224, 240, 114 S.Ct. 1473, 1482, 128 L.Ed.2d 168 (1994); *National Bank of Commerce*, 472 U.S. at 727, 105 S.Ct. at 2927–28; *United States v. Mitchell*, 403 U.S. 190, 205, 91 S.Ct. 1763, 1771–72, 29 L.Ed.2d 406 (1971).

Thus, the first question in this case should be: what state-defined rights, if any, did Don Craft have in the Berwyck property? Under Michigan law, he had the rights to use and enjoy the property in tandem with Sandra Craft, to exclude all others from the property save Sandra Craft, to share equally in the proceeds of any lease or sale of the home, and to receive the entire estate upon the death of Sandra Craft. *See* Mich. Comp. Laws § 557.71; *Rogers v. Rogers*, 136 Mich. App. 125, 356 N.W.2d 288, 293 (1984). The majority implicitly acknowledges that Don Craft had individual rights when it states that "a husband can convey *his interest* to his wife." (Emphasis added.)

However, it does appear that a federal tax lien only attaches to *exclusive* rights in property held by a delinquent taxpayer. *See* (*Leroy I* ), 910 F.2d at 351. In other words, where a delinquent taxpayer cannot exclusively exercise any of the incidents of property ownership, he has nothing to attach. The only rights exclusively held by Don Craft were future interests—the right to share in future proceeds and right of survivorship.

Arguably, Don Craft did not have the right to sell or encumber either of these interests, and therefore did not truly possess anything of value for the IRS to attach. Several Michigan cases state or imply that one spouse has *no* alienable or encumberable interest in entirety property, including future interests. *See Budwit v. Herr*, 339 Mich. 265, 63 N.W.2d 841, 844 (1954); *Zeigen v. Roiser*, 200 Mich. 328, 166 N.W. 886, 890 (1918); *Bauer v. Long*, 147 Mich. 351, 110 N.W. 1059, 1060 (1907); *Tamplin v. Tamplin*, 163 Mich.App. 1, 413 N.W.2d 713, 715 (1987). However, the proposition that a spouse's future interest is inalienable does not appear to have ever been the rule of decision in any case decided by Michigan courts. For instance, in all four cases cited above, the interest at issue was the *present right* to title in the property, not a future interest, and thus insofar as the language could be read broadly to preclude separate future contingent interests, it is *dicta*. Additionally, even if Michigan law forbids the alienation or encumbrance of one spouse's contingent interest, this merely lessens the *value* of that interest, it does not necessarily make the interest worthless. That is, even an inalienable contingent interest is likely to have some value. Thus, I am not confident that a spouse's future interest in a tenancy by the entirety is truly unencumberable, and even if it is, this still does not mean that the spouse has no .valuable interest that may be attached under federal tax law.

This conclusion is required, I think, by *Bank One Ohio Trust Co. v. United States*, 80 F.3d 173 (6th Cir.1996), which indicates that inalienability is *immaterial* in determining whether a federal tax lien can attach to property rights. There, despite the fact that the Ohio Supreme Court had declared that a

trust beneficiary "does not have *any interest* in [a spendthrift trust such as the one in *Bank One* ] because the settlor did not give the beneficiary an interest," *Domo v. McCarthy*, 66 Ohio St.3d 312, 612 N.E.2d 706, 709 (1993) (emphasis added), and despite the fact that the trust was neither alienable or encumberable, this court held that the IRS could attach the income from the trust because the delinquent beneficiary *did* have an interest in the trust despite its inalienability. *Bank One*, 80 F.3d at 176. As we noted:

> [R]estraints on alienation are not effective to prevent a federal tax lien from attaching. . . .
>
> . . . Thus when Congress says, as it has done in § 6321, that an unpaid tax "shall" constitute a lien upon "all" of a delinquent taxpayer's property or rights to property, it follows that the tax is a lien both on property that is alienable under state law and on property that is not.

*Id.*

Similarly, in *Leroy Lane I*, 910 F.2d 343, this court held that, although the federal government could not attach an entirety estate, the government would be entitled to the property if the innocent spouse predeceased the debtor spouse or if the marital estate was otherwise "terminated by dissolution of the marriage or joint conveyance." *Id.* at 351. In effect, then, the government in *Leroy Lane I* had a lien on the debtor spouse's contingent remainder. Thus, regardless whether Don Craft could alienate his contingent remainder pursuant to Michigan law, under federal tax law the IRS lien attached to it in 1989. This future interest was a "right[ ] to property" as defined by Michigan law, and attachable as provided by federal law.

Michigan's legal fictions, revered as they are—that husband and wife are one entity and that neither has any separate interest in a tenancy by the entirety—cannot alter this outcome. As the Supreme Court has made clear, such state-law fictions, while they are perhaps valid defenses against state-law creditors, have no effect on an IRS lien. For example, in *National Bank of Commerce*, the fact that no Arkansas creditor could reach funds of a taxpayer-debtor that were held in

a joint account with other nondebtor individuals did not prevent the IRS from attaching the entire account. *See* 472 U.S. at 726, 105 S.Ct. at 2927. The Court determined that the taxpayer's unconditional and unilateral right to withdraw money from the joint bank account was "property" or a "right[ ] to property" *for purposes of section 6331(a)* of the I.R.C. (a section analogous to 6321). *Id.* at 725–26, 105 S.Ct. at 2926–27. Thus, since the taxpayer could at any time withdraw *all* the money from the account without permission from the joint account holders, the IRS could likewise levy the entire account. Again, state law determines the practical incidents of certain types of ownership, but the state-law consequences of those determinations vis—vis creditors are of no concern in the application of federal tax law. *See id.* at 723, 105 S.Ct. at 2925–26.

Although the majority disagrees, I am satisfied that *United States v. Irvine,* 511 U.S. 224, 114 S.Ct. 1473, 128 L.Ed.2d 168 (1994), also undermines Sandra Craft's position. In *Irvine,* the Court reiterated that legal fictions—although valid protection from creditors under state law—could not be used to avoid federal tax liabilities. There, the taxpayer was the beneficiary of a trust established by her grandfather in 1917. *Id.* at 226, 114 S.Ct. at 1475. The income from the trust was to go to the taxpayer's grandmother and her aunts and uncles (the settlor's wife and children). Upon the death of the last of these primary beneficiaries, the trust was to terminate and the funds were to be divided among the surviving grandchildren, including the taxpayer, Sally Irvine. *Id.* at 227, 114 S.Ct. at 1475–76. After the trust terminated, but before its assets were distributed, Irvine disclaimed her interest in favor of her children. Such disclaimers were valid under state law, and had the effect of removing the disclaiming party from the transaction altogether, *id.* at 239–40, 114 S.Ct. at 1481–82; thus, state law deemed the transfer to be directly from Irvine's grandfather to her children. *Id.*

The I.R.C. section in question taxed "all gratuitous transfers, by whatever means, of *property* and *property rights* of significant value." *Id.* at 233, 114 S.Ct. at 1478 (emphasis added). An exception existed for disclaimed interests in property if the disclaimer was effective under local law and made within a reasonable time after knowledge of the existence of the transfer. *Id.* The IRS claimed that the transfer from Irvine to her children was subject to the gift tax because it was not made within a reasonable time after her knowledge of her interest in the estate. *Id.* at 229, 114 S.Ct. at 1476. The Court held that the 47-year delay in disclaiming her interest was not reasonable, and thus upheld the denial of Irvine's request for a refund. *Id.* at 235–36, 114 S.Ct. at 1479–80.

Significantly, the Court rejected Irvine's argument that her disclaimer related back to the moment of the original transfer of the interest to her as provided by state law. *Id.* at 239, 114 S.Ct. at 1481–82. This "legal fiction" implemented the state's policy to defeat the claims of the disclaimer's creditors. *Id.* at 240, 114 S.Ct. at 1482. However, the state-law rationale for this legal fiction provided no justification vis—vis the federal gift tax, which was meant to curb estate-tax abuse. *Id.* "Since the reasons for defeating a disclaimant's creditors would furnish no reasons for defeating the gift tax as well, ... Congress [must not have intended] to incorporate state law fictions as touchstones of taxability when it enacted the Act." *Id.*

Nothing in the majority opinion distinguishes *Irvine* or *National Bank of Commerce.* Nor does the majority address cases previously decided by this court, such as *Bavely v. United States (In re Terwilliger's Catering Plus, Inc.),* 911 F.2d 1168, 1171 (6th Cir.1990) and *United States v. Safeco Insurance Co.,* 870 F.2d 338, 341 (6th Cir.1989), which support the above analysis. Michigan's tenancy by the entirety doctrine serves to protect the marital home from being compromised to satisfy the debts of one spouse. This rationale does not furnish any reason to defeat the federal tax code when the operation of the I.R.C. will not terminate the entirety estate. Although the majority argues that an IRS lien on one spouse's future interest will place a cloud on the title to the marital home, even this would not interfere with the couple's use and enjoyment of their property. And, even if the possible detri-

mental effect of the IRS lien on the couple's ability to sell their home were an appropriate consideration here, I believe that a properly filed lien, identifying only the delinquent taxpayer's interest and giving no indication of joint liability for the debt, sufficiently mitigates this possibility. Moreover, the adverse effect of allowing a lien on one spouse's future interest is further lessened by the fact that, in Michigan, it appears that creditors may not reach the proceeds of the sale of entirety property if the married couple immediately reinvests the proceeds in new entirety property. *See Muskegon Lumber & Fuel Co. v. Johnson*, 338 Mich. 655, 62 N.W.2d 619, 622 (1954).

## II.

Thus, on March 30, 1989, when the IRS filed its lien on all of Don Craft's property and rights to property, it acquired a lien on his future interest in the Berwyck home. More importantly, the August 28, 1989, transfer of the property to Sandra Craft did not extinguish the IRS's lien on this contingent remainder. Under Michigan law, one spouse cannot use the doctrine of tenancy by the entirety to defeat the rights of a judgment creditor. For instance, in *McCaslin v. Schouten*, 294 Mich. 180, 292 N.W. 696, 698 (1940), Mr. Schouten had been adjudged liable to a bank for $10,000. Evidence indicated that he had used $8104 of this money to pay the mortgage on the marital estate. The bank sought a lien on the tenancy by the entirety, because Mr. Schouten was insolvent, and no other means of recovery could be effected. The Michigan Supreme Court granted the lien, reasoning:

> Being insolvent at the time and indebted to the bank, in so far as Mr. Schouten invested or used his individual funds to pay the mortgaged debt on the entireties property and thereby placed or attempted to place his individual property beyond the reach of his creditors, the transaction constituted a fraud in law....
>
> ....
>
> ... The debtor might be satisfied to give his assets to a stranger or to exchange them for some worthless chattel. But the law will not permit him to do so if he

thereby renders himself uncollectible to the detriment of his creditors.

*Id.*, 292 N.W. at 699.

The court rejected Mrs. Schouten's contention that her entirety estate should not be disturbed by a forced sale in light of the fact that she was innocent of any fraud, finding that "to so hold would enable her to benefit by Mr. Schouten's wrongful use of his individual funds." *Id.*, 292 N.W. at 700. Thus, the bank was awarded $5504—the amount by which the Schoutens' equity in the tenancy increased as the result of Mr. Schouten's wrongful use of funds he owed the bank. *Id.*

Similarly, the Michigan Court of Appeals has recently reiterated this holding on essentially the same facts. *See Miller v. Irwin*, 190 Mich.App. 610, 476 N.W.2d 632 (1991). As in *Schouten*, Mr. Irwin failed to satisfy a judgment against him, and the creditor attempted to attach the marital estate of Mr. and Mrs. Irwin. Michigan Compiled Laws § 566.19(1) provides that a creditor may set aside any fraudulent conveyance to the extent necessary to satisfy his claim. The *Miller* court relied on this provision in ruling that mortgage payments on the entirety estate made after the judgment of indebtedness, to the extent that they increased the Irwins' equity in the property, would entitle the creditors—the Millers—to a lien on the property. *Id.*, 476 N.W.2d at 635.

## III.

These cases make clear, at least to me, that if the transfer to Sandra Craft was made with the intent to place Don Craft's monies beyond the reach of the IRS, the federal government is entitled to set aside the conveyance and execute its lien. *See* Mich. Comp. Laws § 566.19(1); *McCaslin*, 292 N.W. at 700. However, the critical factual point has not been settled—the district court rested on alternative reasoning and did not need to discuss fraud. However, the facts that Don Craft conveyed his interest shortly after the IRS recorded its lien, that he received only one dollar in consideration for the transfer, and that the grantee was Sandra Craft instead of some disinterested party, are certainly sufficient to raise the inference that the transaction was fraudulent. *See Farrell v. Paulus*, 309 Mich. 441, 15 N.W.2d 700, 704 (1944).

If the transfer is set aside, then the IRS maintains its lien on Don Craft's future interest. Of course, the property was sold and his future right to half of the proceeds became a present interest in June 1992. I agree with the majority that, if the transfer is set aside, the IRS would be entitled to half of the proceeds of the June 1992 sale, or $59,944.10, plus interest. The fact that the IRS agreed that its interest in the escrowed funds would extend no further than its interest in the home itself is irrelevant. If the transfer to Sandra Craft was fraudulent, *McCaslin v. Schouten* authorizes a forced sale of the marital property. *See* 292 N.W. at 700. If the IRS could force a sale in order to enforce its lien, surely it must be able to take an equal amount when the sale has been consummated without compulsion.

## IV.

For the foregoing reasons, I concur in the result reached by the majority only because the summary judgment entered in favor of the IRS must be reversed. The majority opinion, erroneously I believe, denies that Don Craft had a separate, attachable, future interest in the tenancy by the entirety. This holding not only contravenes established precedent, but provides an avenue for easy avoidance of federal income-tax laws. Respectfully, we are bound to reject this result.